McKinney, J.,
delivered the opinion of the Court.
The complainants are a portion of the heirs at law *374 and distributees of the estate of John Jones, who died intestate in Gribson county, in 1853, and the defendants are the administrator and remaining distributees and heirs.
In addition to an account of the administration, the complainants seek distribution and partition of the slaves and real estate.
The case is brought here upon a single question, in relation to part of the real property. Some time previous to the year 1846, the intestate made a parol gift to the1 defendant, Joshua, his son, of two hundred acres of land, part of the tract on which the intestate resided. The only written evidence of the gift is a memorandum made in a book kept by the intestate, showing the advancements made to his several children, which is as follows: “ Grave to my son, Joshua, 200 acres of land, to be taken off of the west side and north end of the tract I now live on, at $450.00.” The land was not run off or set apart by metes -and bounds, to the donee; but about the first of the year 1847, and nearly seven years before the death of his father, he entered into possession of a tenament on the land intended for him, and has resided thereon ever since, and has made valuable improvements on the same. Before the filing of this bill, he had been in possession for more than seven years, claiming it as his own, with the knowledge and approbation of his father during his life; and since the death of his father, he has, in like manner, claimed it against the other heirs, to which no objection has been made, except by the complainants — his brothers-in-law. The proof shows that some thirty acres or more were enclosed and adversely held by the defendant, Joshua, for *375 a period of more than seven years before this suit. The Chancellor was of opinion that the defendant would only he protected in the possession, under the second section of the act of 1819, of so much of said land, if any, as he had in actual possession, by enclosure, for the full space of seven years, prior to the death of the intestate ; and that on the • death of intestate, and consequent descent of the title to his heirs at law* the operation of the statute Avas arrested.
In this view, his Honor erred. By the descent cast, the heirs Avere placed exactly in the shoes of their ancestor. And the statute having attached and commenced running against him in his lifetime, it continued to run, without intermission, against his heirs. Its operation could only have been arrested by a suit at law, or in equity, effectually prosecuted. The ancestor being free from disability when the adverse possession was taken, and running of the statute commenced, there is no saving or exception in the statute in favor of his heirs; and they, though infants or femes covert, were bound to sue just as much as their ancestor would have been had he lived, before the expiration of seven years from the commencement of the adverse possession.
The idea that the title descended to all the heirs jointly, and, therefore, the possession of the defendant, Joshua, was the possession of all, and, consequently, the statute ceased to operate from the descent of the title to the heirs, is altogether fallacious. The exclusive and adverse character of the defendant’s possession, upon which the operation of the statute depended, was, in no respect, changed or affected by the descent of the title to the heirs.
*376 The result is, that the defendant, Joshua, has acquired a possessory right, to so much of said tract of land as may have been held and occupied, by actual enclosures, for the period of seven years' before the commencement of this suit; for which he must account at the estimated value put upon the land at the time of the advancement.
The decree will he modified accordingly.